**Carl L. BALDWIN et al., Plaintiffs,**

v.

**J. W. MORGAN, R. E. Lindbergh, J. T. Waggoner, individually and as Members of the Board of Commissioners of the City of Birmingham, et al., Defendants.**

**Civ. A. No. 8634.**

United States District Court
N. D. Alabama, S. D.

March 4, 1957.

Demetrius C. Newton and Oscar W. Adams, Jr., Birmingham, Ala., for plaintiffs.

Cabaniss & Johnston, Joseph F. Johnston and Thaddeus Holt, Jr., James H. Willis, City Atty., James M. Breckenridge, Asst. City Atty., Birmingham, Ala., and John Patterson, Atty. Gen., Gordon Madison, Asst. Atty. Gen., and William F. Black, Atty., Montgomery, Ala., for defendants.

LYNNE, Chief Judge.

This is but another in the growing list of cases wherein both the tutored and the untutored apparently entertain the mistaken notion that the proper function of the federal courts is propaganda rather than judicature. They who es-

pouse the theory that such courts should essay the roles of super legislatures know not what they do. One day they may be reminded of Mary Shelley's terrified self-reproach in "Frankenstein": "I beheld the wretch—the miserable monster whom I had created."

The framers of our Constitution, in contriving a system of checks and balances, taught us a lesson which we have never learned, but which we have never quite forgotten; that the federal judicial power extends only to "cases" or "controversies" in the constitutional sense. No judge of a federal court has a right to adjudicate a difference or dispute of a hypothetical or abstract character. The wisdom of withholding from the federal judiciary power to render advisory opinions would seem to be self evident. Public Serv. Comm. of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291; United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754; Alabama State Federation of Labor, etc., v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; People of State of California v. San Pablo & Tulare R. Co., 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747; Indemnity Ins. Co. of North America v. Kellas, 1 Cir., 173 F.2d 120; Johnson v. Interstate Transit Lines, 10 Cir., 163 F.2d 125, 172 A.L.R. 1242.

In vain, the court has searched the allegations of the complaint for a definitive statement of facts, showing "that there is a substantial controversy, between [plaintiffs and defendants] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., supra [312 U.S. 270, 61 S.Ct. 512].

Stripped of excess verbiage and argumentative innuendo, a summary of the factual averments in capsule form is as follows: On December 22, 1956, plaintiffs, Negro citizens, holding tickets entitling them to transportation as passengers in interstate commerce, while seated in a waiting room of the Birmingham Terminal Station designated "Interstate and White Passengers," were placed under arrest and confined in jail by police officers of the City of Birmingham.

Mere reference to the silence of the complaint as to the character of the charge on which plaintiffs were arrested is to demonstrate its insufficiency. It is not arguable, nor has it been contended, that their status as interstate passengers would insulate them from a charge of breach of the peace under local law.

Oral arguments of counsel for plaintiffs fell far short of clarifying the theory of the complaint. Their objective, it appeared, was to obtain a declaratory judgment that Title 48, Code of Alabama 1940, § 186, is unconstitutional because it offends the Fourteenth Amendment and that these plaintiffs have legal standing to raise that question. Forensic efforts to defend the present complaint recalled to the court's mind Milton's lines from "Paradise Lost":

"With ruin upon ruin, rout on rout, Confusion worse confounded."

It seems incredible that an effort will be made to amend the complaint although a reasonable opportunity will be afforded to do so. It is quite clear that the challenged section of the Alabama Code has no direct impact on passengers of any race. For a violation of any order promulgated by the Alabama Public Service Commission under its authority only the offending railroad may be held criminally responsible as provided in Title 48, Code of Alabama 1940, § 428.

There is no ordinance of the City of Birmingham or statute of the State of Alabama which purports to compel in-

terstate Negro passengers to occupy waiting rooms designated "Colored." It is conceded that if such order were issued by the Alabama Public Service Commission it would be ineffective because of the transcendent order of the Interstate Commerce Commission entered on November 7, 1955, reported in 297 I.C.C. 335.

█ The court is not, nor could it be, concerned on the complaint of these plaintiffs, with the constitutionality of state action designed to compel the segregation of white and Negro intrastate passengers. Admittedly these plaintiffs did not fall within that category.

The long and the short of the matter is that a mistake apparently was made in arresting these plaintiffs. Charges pending against them have been dismissed. No good purpose would be served by prolonging this baseless litigation.