**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, Plaintiff,**

v.

**SEATRAIN LINES, INC. and Sea Land Services, Inc., Defendants.**

United States District Court
S. D. New York.

Jan. 7, 1963.

Thomas W. Gleason, New York City, for plaintiff.

Lorenz, Finn & Giardino, New York City, for defendant Seatrain Lines, Inc.

MacMAHON, District Judge.

Plaintiff, I.L.A., moves for summary judgment in this action for a declaratory judgment brought under 28 U.S.C. § 2201. The action seeks a declaration as to whether receipt by the I.L.A. of certain moneys held in escrow would constitute a violation of Section 302 of the National Labor Relations Act of 1947, 29 U.S.C. § 186 (hereinafter the "Act"). Section 302(a) of the Act makes it unlawful for any employer to pay, lend, or deliver, or agree to pay, lend or deliver, any money or other thing of value to any labor organization which represents any of the employees of such employer. Section 302(b) makes it unlawful for any person to receive, or accept, or agree to receive, or accept, any such payment.

The defendant employers are shipping companies employing longshoremen represented by the I.L.A. In the course of negotiations for a new collective bargaining agreement, a dispute arose about the employers' use of pre-loaded cargo containers [1] in the Port of New York. The I.L.A. objected to their use because they reduced employment of longshoremen by saving dockside handling of the cargo which they contained. The reduction in employment affected the income of the I.L.A. which was in part derived from the employers' check-off of union dues on the basis of 1¢ an hour for each

---

1. Cargo containers are boxes approximately 35 feet long, 8 feet high, and 8 feet wide, within which water-borne freight is loaded.

hour worked by I.L.A. members in the Port of New York.

The dispute was settled by agreement made on January 31, 1962 under which the I.L.A. agreed to allow the use of cargo containers in consideration of the employers' promise to pay 28¢ per gross ton for all cargo handled through the Port of New York in containers. Payments were to be made to a fund jointly administered by trustees appointed by the I.L.A. and the employers. The agreement is not a model of clarity, but, as we read it, 90% of the money received by the fund was to be used to provide additional welfare benefits to the employers' employees, and 10% was to be set aside in a special account to be held in escrow for the I.L.A. pending a determination by the federal court or an opinion by the United States Attorney General as to the legality of paying the escrow moneys to the I.L.A. It was further agreed that if the court or the Attorney General determined that payment to the I.L.A would be legal, the trustees would deposit the escrow moneys in the I.L.A.'s account, but if it were determined that such payment would be illegal under Section 302 of the Act, the parties would further renegotiate the disposition of the escrow fund.

No escrow moneys have, as yet, been paid, and plaintiff has commenced this suit seeking a declaration that payment of such moneys to the I.L.A. will not violate the Act. Plaintiff contends, and defendants concur, that there are no issues of fact and that the sole issue on this motion for summary judgment is whether payment of the escrow moneys to the I.L.A. would violate Section 302 of the Act or fall within the exception set forth in Section 302(c) (2).[2]

■ While there is no doubt as to the availability of the summary judgment procedure in this type of action (John-

son v. Nationwide Mutual Ins. Co., 276 F.2d 574 (4 Cir., 1960); Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2 Cir., 1943)), it is well established that before a court can issue a declaratory judgment the underlying claim for declaratory relief must present an actual controversy between parties having adverse legal interests of sufficient certainty and immediacy. Alabama State Federation of Labor Local Union No. 103, United Brotherhood of Carpenters and Joiners of America v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The basic question here, therefore, is whether this action presents an actual controversy, or merely a mutual quest for an advisory opinion.

■ There is no dispute between the parties about the escrow moneys. Indeed, there can be none for they have expressly agreed that payment to the I.L.A. shall be made only if the court or the Attorney General determines that it is legal to do so. Nor is there any adverse interest. On the contrary, the legal interests of the parties is identical in that they would be equally liable if payment to the I.L.A. is prohibited by Section 302. It is clear, therefore, that the present suit does not seek the resolution of any adverse controversy actually existing between the parties, but rather a mutual quest for an advisory opinion as to an incipient liability of both parties under Section 302. The so-called "dispute" amounts to nothing more than a friendly difference of opinion about the interpretation of Section 302 respecting the contingent event of payment of the escrow moneys. Such a theoretical dispute is not sufficient to warrant the

2. Section 302(c) (2) provides as follows:
"The provisions of this section shall not be applicable * * * with respect to the payment or delivery of any money or other thing of value in satisfaction of the judgment of any court or a decision or

award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress."

granting of a declaratory judgment. West v. Bank of Commerce & Trusts, 153 F.2d 566 (4 Cir., 1946); Henderson v. State Democratic Executive Committee of Georgia, 198 F.Supp. 360 (N.D.Ga. 1961); Morania Oil Tanker Corp. v. Humphrey, 156 F.Supp. 543 (D.C.D.C. 1957).

Not only is there a lack of any real controversy, but there is also an absence of sufficient immediacy and certainty of liability to justify a declaratory judgment. Neither party is in jeopardy of liability under Section 302 because no escrow moneys have been paid, and, what is more, the parties have agreed that none shall be unless it is determined that it is legal to do so.

■■■ Section 302 is penal in nature (Section 302(d)). The duty to enforce the criminal law is vested by the Constitution not in the judicial arm of the government but in the executive. Thus, a determination to prosecute if the escrow fund is paid over to the I.L.A. lies with the Attorney General. It would be an improvident trespass upon the separation of the powers, if not a complete usurpation of power, were the court to grant immunity in advance of an actual transaction. Cf., Pugach v. Klein, 193 F.Supp. 630 (S.D.N.Y.1961). This is the more so in the field of labor-management relations where it is common knowledge that financial transactions between the employers and labor representatives are not always as innocent as they appear on the surface. Declaratory judgment, therefore, as to potential liability under a criminal statute aimed at such transactions is singularly inappropriate. Pauling v. Eastland, 109 U.S. App.D.C. 342, 288 F.2d 126, cert. denied, 364 U.S. 900, 81 S.Ct. 233, 5 L.Ed.2d 194 (1960); Reed v. Littleton, 275 N.Y. 150, 9 N.E.2d 814 (1937).

■■■ Furthermore, for aught that appears now, there might never be an actual prosecution (and thus never even potential liability) due to the fact that the Attorney General might consider such payment to be, as the I.L.A. urges, within the exception provided in Section 302(c) (2) of the Act. Thus, there is here no more than the mere prospect of liability posed by the bare existence of a statute. Such a contingent liability clearly precludes the granting of declaratory relief. International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); United Public Workers of America (CIO) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 280 F.2d 453 (5 Cir., 1960); Johnson v. Interstate Transit Lines, 163 F.2d 125, 172 A.L.R. 1242 (10 Cir., 1947); Feldman v. Ervin, 128 F.Supp. 822 (S.D.Fla.1955).

In conclusion, then, as no truly justiciable controversy is presented by this suit, no cause of action is stated and the complaint must be dismissed.

So ordered.