MIDLAND–GUARDIAN OF PENSACO-
LA, INC., Plaintiff-Appellant,

v.

Mary H. CARR, Wife of/and Earl T.
Carr, et al., Defendants-Appellees.

No. 27020.

United States Court of Appeals,
Fifth Circuit.

May 7, 1970.

Rehearing Denied and Rehearing En
Banc Denied June 18, 1970.

Carl W. Cleveland, New Orleans, La.,
for appellant.

Fernand F. Willoz, III, New Orleans,
La., for appellees.

Before RIVES, BELL and DYER, Cir-
cuit Judges.

RIVES, Circuit Judge:

The sole issue on this appeal is the type of relief granted to Midland by the District Court when it sustained Midland's attack upon a purported act of sale to certain valuable real property [1] executed by Earl T. Carr to Earl T. Carr Realty Co., Inc. The district court decreed that the sale of the property "be and it is hereby declared null and of no effect and the property is subject to the just claims of the debtor's creditors." Midland insists on this appeal that the district court should have nullified the sale only insofar as it, Midland, the creditor asserting the action, is concerned. Midland is aggrieved by the district court's choice of remedy because Midland was the last of Earl T. Carr's creditors to reduce its claim to judgment and would rank last in its claim to the proceeds from the sale of the property; whereas if the decree operated only in favor of the creditor successfully asserting the action, Midland would have the right to execute against the property in the hands of the fraudulent transferee.

In its complaint filed in the district Court, Midland sought to recover a deficiency judgment on eleven promissory notes executed by Earl T. Carr and his wife, Mary H. Carr, secured by separate collateral mortgages on each of eleven house trailers. The Carrs contended that their signatures on the promissory notes were procured by fraud, in that Midland represented that their signatures were necessary only to reflect that Midland retained the chattel mortgages on the trailers and Midland would in no event seek collection of the amount of the notes except to the extent of foreclosing on the chattel mortgages. The district

---

1. A house and lot bearing municipal number 1819 Esplanade Avenue, New Orleans, Louisiana.

court found as a fact that the signatures of the Carrs were not procured by fraud and entered a money judgment against the Carrs for $31,385.31 plus interest, costs and attorneys' fees in the amount of 25%.[2]

Midland joined its suit for a money judgment against the Carrs with an attack upon the conveyance of real estate by Earl T. Carr to Earl T. Carr Realty Co., Inc. The attack upon the conveyance was based in the alternative upon two separate and distinct theories of action, the action to declare simulation and the revocatory action embodied in Louisiana Civil Code, Articles 2239 and 1970–1994, respectively, which adopted the theories of action from the French Civil Code and its predecessors.[3]

The relief granted by the district court was under the doctrine of simulation. The effect was simply to declare the alleged transfer of property void and of no effect and to make the property subject to the just claims of Carr's creditors. The relief thus chosen followed the first alternative asserted by Midland in its complaint.[4]

Apparently the district court granted Midland the relief which it sought. The appendix on this appeal closes with this final judgment of the district court. Midland's original brief informs us of further proceedings:

"Thereafter, Midland filed a 'Motion for New Trial or for Amendment of Judgment' in order to present its arguments that judgment should have been rendered on the Revocatory Action basis, rather than the basis of simulation. Although Midland's motion was not opposed by Mr. Carr, Mrs. Carr, Carr Realty, or Nu-Deal, the District Judge refused to grant Midland's motion despite vigorous argument by Midland that the *evidence was irreconcilable with a judgment of simulation, although it clearly justified a judgment based upon the Revocatory Action.* The District Court was informed that even though the modification of the judgment was of no consequence to the parties cast, it was of crucial importance to Midland. The judgment seriously aggrieves Midland although rendered in its favor, because the judgment of simulation renders Midland's money judgment unenforceable and uncollectible.

"Midland thereafter instituted this appeal, which has not been answered

---

2. On appeal, Midland concedes that the sum of $31,385.31 includes attorneys' fees of 25% of the amount claimed, and the money judgment should be amended accordingly. This is a mere mathematical or clerical mistake which may be corrected by the district court at any time under Rule 60(a), Fed.R.Civ.P.

3. Lemann, Some Aspects of Simulation in France and Louisiana, 29 Tul.L.Rev. 22 (1954); Comment, The Revocatory Action, 9 Tul.L.Rev. 422 (1934); Comment, The Action in Declaration of Simulation, 17 Tul.L.Rev. 457 (1943); Rives, Historical Review of the Doctrine of Simulation in Louisiana, 10 Tul.L.Rev. 188 (1936).

4. Paragraphs 9 and 10 of Midland's complaint read as follows:
"9. The purported Act of Sale is a simulation with *no reality or substance* whatsoever; no consideration was paid for the purported transfer, and defendants Earl T. Carr and Mary H. Carr have retained possession and control of the property above described until the date of filing of this petition, and have continued to collect the income from said property and use it for their individual purposes.
"10. Alternatively, and only in the event that this Honorable Court should find that the purported Act of Sale is not a simulation; plaintiff declares that the Act of Sale described above was passed in fraud of plaintiff's rights as a creditor of Earl T. Carr, May [sic] H. Carr, and Nu-Deal, and in order to fraudulently remove the said property from the assets of defendants, which would have otherwise been subject to seizure and sale by Plaintiff, Midland-Guardian of Pensacola, Inc., to satisfy any judgment it might obtain against defendants."

or opposed by any of the parties cast below, seeking a modification of the District Court's judgment to sustain the Revocatory Action and to grant relief consistent therewith."

The only appearance noted by the Carrs in this case is in a letter to the Clerk, reading:

"I am in receipt of your letter dated May 20, 1969, regarding the above suit.

"Please be advised that Mr. F. F. Willoz, III, discontinued representing me due to my inability to pay legal fees. For this same reason I am unable to engage a new counsel. Therefore I place myself at the mercy of the court and will not proceed in my own behalf.

"However I will be most willing to cooperate in any manner required."

A letter to the Clerk from Midland's counsel is more explicit:

"This letter is to inform you that the defendants in the captioned proceedings, including Mr. and Mrs. Carr, have no interest in the outcome of the pending appeal, and I am certain that they have no interest in fil ing a brief herein.

"The record of these proceedings will reveal that the judgment by the District Court was rendered *against* all defendants and in favor of appellant, Midland-Guardian of Pensacola, Inc. This appeal was taken by Midland-Guardian of Pensacola, Inc. to seek a modification of the type of relief granted by the District Court because as the judgment stands, the defendants will lose the property involved in this litigation, but Midland-Guardian of Pensacola, Inc. will rank behind other creditors. The appeal simply seeks a modification of the judgment to grant Midland-Guardian of Pensacola, Inc. the preference to

the property involved pursuant to the law of the State of Louisiana."

We have explained perhaps at excessive length, the status of this appeal because of the zeal with which the appeal is prosecuted by Midland's counsel.

We are convinced of the correctness of Midland's explicit concessions that this appeal is not "opposed by any party cast below" and that the appellees Earl T. Carr and Mary H. Carr "have no interest in the outcome of the pending appeal." Midland argues that it is an aggrieved party with a right to appeal from a judgment in its favor which denied it a part of the relief which it prayed.[5] That much may be conceded arguendo, but the question goes much deeper. Under Article III, Section 2 of the Constitution of the United States, the judicial power extends only to actual cases or controversies.[6] There is no case or controversy on this appeal between Midland and the Carrs. As between them the case has become moot.

"The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it."

California v. San Pablo & Tulare R.R. Co., 1893, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747.

To constitute a case or controversy there must be adverse parties with real interests whose contentions are submitted to the court for adjudication.[7]

There are no such adverse parties on this appeal. Accepting at face value the statements heretofore quoted from Midland's brief, there were no adverse parties before the district court on the hearing of Midland's "Motion for New Trial or for Amendment of Judgment." As the issues had then been refined by the trial and the final judgment of the district court, the controversy which Mid-

5. Citing Aetna Casualty & Surety Co. v. Cunningham, 5 Cir. 1955, 224 F.2d 478, 480, 481, and 9 Moore Federal Practice, 2d ed., ¶ 73.04.

6. See Flast v. Cohen, 1968, 392 U.S. 83, 94, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947; Wright on Federal Courts, 2d ed., § 12.

7. Muskrat v. United States, 1911, 219 U.S. 346, 357, 31 S.Ct. 250, 55 L.Ed. 246.

land asserts is between Midland and the other creditors of the Carrs. Those creditors were not before the district court and are not before this Court. Without notice and an opportunity to be heard, we can, of course, render no judgment upon the rights of those creditors vis-a-vis Midland. This Court has no jurisdiction to grant Midland the relief which it prays. The appeal is therefore

Dismissed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.