GREENPEACE, U.S.A., et al., Plaintiffs,

v.

Robert MOSBACHER, Secretary of Commerce, et al., Defendants.

Civ. No. 88–2158 GHR.

United States District Court, District of Columbia.

Aug. 17, 1989.

Ann E. Misback, Roberta L. Corne, James R. Jackson, Jr., William D. Rogers, and Arnold & Porter, Washington, D.C., for plaintiffs.

Eileen Sobeck, Donald A. Carr, James C. Kilbourne, U.S. Dept. of Justice, Land & Natural Resources Div., Timothy Keeney, Gene Martin, Dept. of Commerce (NOAA), and Daniel Bodansky, Office of the Legal Advisor, Dept. of State, Washington, D.C., for defendants.

## ORDER

REVERCOMB, District Judge.

The defendants have moved to dismiss this case, which involves a challenge to the decision of defendant Secretary of Commerce in 1988 not to "certify" the Republic of Iceland as a nation that hurts the cause of international whaling conservation, pursuant to the "Pelly Amendment," 22 U.S.C. § 1978(a)(1). Such certification would, among other things, enable the President to impose import restrictions on the offending country. *Id.* § 1978(a)(3). The plaintiffs also seek to have the Court declare void the 1988 whaling agreement between the United States and Iceland because of the defendants' alleged failure to comply with requirements of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, and the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* Nearly a year after the case was filed, the defendants moved to dismiss on the ground that the claims have become moot. The plaintiffs opposed the motion; oral argument was heard on August 4, 1989. In this order, the Court grants the motion and dismisses the case.

## Relevant Facts

The international whaling community in recent years has been critical of Iceland's killing of whales, which Iceland states is part of a research program to study the relationship of whales to Iceland's fishery resources. Despite a non-binding resolution of the International Whaling Commission (IWC) in 1987 criticizing Iceland's program, the United States agreed during its discussions with the Icelandic government in Ottawa ("the Ottawa agreement") not to certify Iceland under the Pelly Amendment. In 1988, the IWC again adopted a resolution notifying Iceland that its program did not meet the Commission's criteria for scientific research. Icelandic officials then met with those of the United States, after which Iceland announced that it had lowered the number of whales that it would kill in its 1988 program. The United States Secretary of Commerce again decided not to certify Iceland under the Pelly Amendment. This suit, brought by more than a dozen environmental organizations, followed.

At the 1989 meeting of the IWC this spring, the Commission gained concessions from Iceland and adopted a mild resolution that did not recommend that Iceland refuse permits for its program in 1989. Even more significantly, the Icelandic fisheries minister told the international body that Iceland in 1989 would complete its four-year whaling research program, would not kill any whales under its scientific program in 1990, and did not have plans to do so in later years.[1]

## The Doctrine of Mootness

■] Because federal courts are limited to hearing only "cases" and "controversies," U.S. Const. art. III § 2, the United States Supreme Court has ruled that feder-

al courts may not judge abstract legal disputes without the existence of a present and live controversy, the resolution of which would have an actual effect on the parties. *See, e.g., Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70–71, 104 S.Ct. 373, 374–375, 78 L.Ed.2d 58 (1983); *California v. San Pablo & Tulare Railroad Co.,* 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893). If a dispute is rendered academic because the relief sought can no longer be granted, the dispute is moot and the case must be dismissed. The movant has the burden of showing that a case is moot and must demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) that interim events have "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

Moreover, because certain important disputes remain "live" only for so short a time that a court cannot decide the issue before it becomes moot, courts have carved an exception to the mootness doctrine for disputes that are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *see Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The "capable of repetition" aspect makes the controversy over a legal point a real, non-moot issue for persons that are likely to be affected by the decision in the future.

## Applying the Mootness Test

■] The Court concludes that the claims of the plaintiffs—which surround the defendants' response to steps taken by Ice-

---

1. The plaintiffs argue that this "oral promise" by a single official should be given little weight, citing *No GWEN of Lane County, Inc. v. Aldridge,* 841 F.2d 946, 953 (9th Cir.1988) (statement of U.S. Senator regarding intentions of Air Force given little weight), and *Pacific Legal Foundation v. Andrus,* 657 F.2d 829, 832 (6th Cir.1981) (promise of government premised on completion of dam that was not yet complete).

Even if there is reason to believe that the Icelandic government will change its mind with

regard to whaling—*see* Associated Press, June 12, 1989, "Iceland Won't Stop Whaling Despite Greenpeace Boycott" (quoting the Icelandic Foreign Minister as saying that the nation "will never give [whaling] up. come hell or high water")—a future decision to whale would involve different circumstances and would require a new and different Pelly Amendment determination, which in turn could be challenged by the plaintiffs before too much harm to the whale population could be inflicted.

land and the IWC in 1988—have become moot by the activities of Iceland and the IWC in 1989.

In regard to the claim that the Secretary of Commerce abused his discretion in deciding not to certify Iceland under the Pelly Amendment for its 1988 whaling program, the Court notes that the 1988 program has been completed, and that Iceland is now operating under its 1989 plan. The 1989 plan did not result in a negative recommendation from the IWC and is not challenged in this lawsuit. The relief requested by the plaintiff—a declaratory judgment by the Court that the defendant abused its authority—would be merely academic. The Pelly Amendment states that the Secretary of Commerce must certify a country when its nationals *"are* conducting" fishing operations that "diminish the effectiveness of an international fishery conservation program." 22 U.S.C. § 1978(a)(1) (emphasis added). Accordingly, even if the Court were to rule in favor of the plaintiff, the Secretary would not be empowered to certify Iceland for actions taken in the past but now abandoned.[2]

Moreover, it cannot be said that the decision of the Secretary of Commerce with regard to Iceland's policies in 1988 still has effect today. The whaling operations of Iceland in 1989 appear to be substantially different from those in 1988. First, the 1989 program calls for the killing of a substantially fewer number of whales. Second, the 1989 program was presented along with a pledge that Iceland's lethal whaling would cease at the end of the year. Third, and perhaps most significantly, the IWC adopted a resolution that was milder than the 1988 resolution and that noted that Iceland had complied with many of the scientific requests of the IWC. Accordingly, because Iceland's 1989 program differs significantly from the 1988 program and because the IWC appears to have adopted a substantially different view of Iceland's operations, the Court concludes that the Secretary of Commerce's decision not to certify Iceland in 1988 cannot be said to still "have effect" after the start of the 1989 program.

Similarly, the defendants' discussions and agreement with Iceland in 1988, which forms the basis of the second of the plaintiffs' two broad areas of claims, only concerned activities that took place under the 1988 program. The fact that the defendants allegedly failed to take certain steps before entering into the 1988 agreement has no practical effect today because the time period covered by the agreement is over. *See Monzillo v. Biller,* 735 F.2d 1456, 1459 (D.C.Cir.1984) (when the activities to be covered by an injunction are completed, the case is moot). Because the Icelandic whaling situation has changed significantly since the filing of this suit, only claims challenging the reactions of the defendants since then present live controversies. The plaintiffs have not challenged actions in 1989. In sum, the Court concludes that the claims by the plaintiffs concerning actions of the defendants are moot because the actions no longer affect national policy in any real way and because a declaratory judgment that the actions were defective could have no effect.

*The Exception to the Mootness Doctrine*

▪ The plaintiffs contend that even if their claims are considered to be moot, they still should be decided because the claims are capable of repetition yet evade review. The Court disagrees.

First, the Court concludes that the plaintiffs' claims do not evade review. The Pelly Amendment decisions mentioned in this

2. The plaintiffs have not argued that the Pelly Amendment should be interpreted as either permitting or requiring the Secretary of Commerce to certify a nation for *past* operations that have hurt the cause of international fishery conservation. Such an interpretation might fit the purpose of the amendment by discouraging nations from engaging in any operations—even short-term ones—that harm fishery conservation, just as criminal sanctions imposed on those who have ceased criminal activities are useful in deterring others. *See* R. Posner, *Economic Analysis of Law* 205–06 (3d ed. 1986). However, because the clear terms of the Pelly Amendment authorize certification only for those nations that "are conducting" harmful fishery operations, the Court declines to adopt a broader interpretation of the amendment for the purposes of this motion.

were made came soon after meetings and resolutions of the IWC, which recently has met once a year.[3] A court is capable of ruling in a record review case in less than a year. *See American Cetacean Society v. Baldridge,* 604 F.Supp. 1398 (D.D.C.1985) (decision in a Pelly Amendment case reached within a few months).

Judgment in the instant case was delayed because the plaintiffs sought and the Court granted extensive discovery, which is permitted only in the extraordinary agency record review case. *See, e.g., Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (general rule against developing a record during litigation involving record review); *Dopico v. Goldschmidt,* 687 F.2d 644, 654 (2d Cir.1982) (a court should grant discovery when there are unusual indications that the agency's record is incomplete). The discovery in this case was permitted only because of the unusual allegation that the Secretary of Commerce improperly took into account national security concerns in his decision not to certify Iceland, in violation of the standard set forth in *Japan Whaling Association v. American Cetacean Society,* 478 U.S. 221, 233, 106 S.Ct. 2860, 2867, 92 L.Ed.2d 166 (1986) (dictum stating that a decision based on factors other than conservation constitutes an abuse of discretion). It would not be expected that a decision in future Pelly Amendment cases would take as long as it has in this case.

Because the Court concludes that the claims do not evade review, it does not need to address fully whether they are capable of repetition. It is worth noting, however, that although Pelly Amendment

disputes are likely to recur, it is questionable whether the exact issues in this case are truly are capable of repetition.[4] First, the plaintiffs allege that the Secretary of Commerce improperly considered non-conservation factors in its Pelly Amendment decision. Because this claim does not necessarily raise difficult legal questions—it is fairly clear that the Secretary must base its decision on conservation factors alone, *see Japan Whaling Association,* 478 U.S. at 233, 106 S.Ct. at 2867—the primary inquiry would appear to be fact specific. The claims in this case depend on the specific details of Iceland's late–1980's whaling program, the IWC's response, and the defendant's scientific assessments and other decisions—details that would limit the precedential of this case on future Pelly Amendment suits.

Furthermore, although the plaintiffs' claims regarding whether the defendants fulfilled the legal requirements in reaching the agreement with Iceland in 1988 would certainly involve some purely legal inquiry, rulings on these claims also would depend heavily on the specific facts of this case.

In sum, the Court concludes that the plaintiff's claims are do not evade review and that it is questionable whether the exact claims at issue here are capable of repetition.

*Conclusion*

In dismissing this case as moot, the Court has not judged the merits of the plaintiffs' claims. What the Court has concluded is that the debate over the aspects of Iceland's *1988* whaling program—whether Iceland's actions that year hurt the in-

**3.** Pelly Amendment decisions would have to be made as often as once a year only if a nation's whaling policies or the international whaling conservation program changes significantly once a year. This is not necessarily the case. *See Japan Whaling Association v. American Cetacean Society,* 478 U.S. 221, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986) (no mention that Japan's whaling policies had changed in between the time the suit was filed and the time of the Supreme Court decision).

**4.** The plaintiffs cite cases for the proposition that when officials vigorously contest that what they have done in legal in the face of allegations that it is not legal, the Court should presume

that the official will repeat his actions in future settings. *Doe v. Harris,* 696 F.2d 109, 113 (D.C. Cir.1982). The *Doe* case—which involved the legality of the release of psychiatric records pursuant to a subpoena—is readily distinguishable from the instant case, which involves allegations that the defendants acted improperly for the purpose of aiding the United States' national security relations with Iceland in 1988. Because of the fact-specific nature of the claims of impropriety in the instant case, the Court believes that the scenario of allegations presented in this case are not likely to be repeated in a substantially similar case any time soon.

ternational anti-whaling effort, whether the Secretary of Commerce's 1988 decision under the Pelly amendment was done in violation of law, and whether the 1988 agreement was legally defective—are now moot because of a significant change in circumstances. Iceland in 1989 has adopted a new program, which was different enough from previous plans that the IWC decided not to recommend against it, and has stated that it will not whale in 1990—if true, a significant step forward for the whale preservation effort. The defendants may have certain responsibilities to act in response to the events of 1989, but such responses are not part of this suit. Because a review of the actions of the defendants in 1988 can no longer have a practical affect what is done in 1989 or future years, the review of the defendants' 1988 actions is moot.

*Order*

Accordingly, it is ORDERED that the defendants' motion to dismiss is GRANTED and that the case is DISMISSED.